**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ERYKAH ARDIS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **SEMICOLON BOOKSTORE AND** | ) |
| **ART GALLERY,** | ) |
| | ) |
| Defendant. | ) |

## **COMPLAINT**

NOW COMES Plaintiff, ERYKAH ARDIS ("Plaintiff" or "Ardis"), by her attorneys, The Karmel and Torres Law Firm, complains of Defendant, SEMICOLON BOOKSTORE AND ART GALLERY ("Semicolon" or "Defendant"), as follows:

## **INTRODUCTION**

1. Plaintiff is alleging age discrimination against the Defendant under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 623(a)(1) *et seq*. and the Illinois Human Rights Act, 775 ILCS § 5/2-102(A) *et seq* (IHRA). Additionally, Plaintiff is alleging disability discrimination against Defendant under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112(a) *et seq*. as amended, and the IHRA, 775 ILCS § 5/2-102(A) *et seq*. Finally, Plaintiff alleges that Defendant created a hostile work environment based on her age and disability. Plaintiff seeks monetary damages, attorneys' fees, and costs arising from Defendant's unlawful age and disability discrimination and creating and fostering a hostile work environment.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4).

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims since those claims arise out of the same nucleus of operative fact giving rise to Plaintiff's federal claims.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 as Defendant resides within the district and all of the relevant actions occurred within this district.

**PARTIES**

5. Plaintiff is an adult female aged forty-two (42) during the relevant time period and resides in the Northern District of Illinois. Plaintiff's race is black.

6. At all times relevant, Plaintiff was an "Employee" within the meaning of Section 775 ILCS § 2-101(A)(1)(a) of the IHRA, Section 42 U.S.C. § 12111(4) of the ADA and Section 29 U.S.C. § 630(f) of the ADEA.

7. Defendant is a book and artwork store located in Chicago, Illinois.

8. At relevant times, Defendant possessed the necessary number of employees for this Complaint for the purposes of the ADEA, ADA and IHRA.

9. At all relevant times, Defendant was an "Employer" within the meaning of Section 775 ILCS 2-101(B)(1)(b) of the IHRA, Section 29 U.S.C. § 630(b) of the ADEA and Section 42 U.S.C. 12111(5)(A) of the ADA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. On February 13, 2023, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights, which was cross-filed with the Employment Equal Opportunity Commission, alleging that Defendant discriminated against her due to her age and disability. On December 5, 2023, Plaintiff received a right to sue letter from the Illinois Department of Human Rights granting Plaintiff 90-days to file a lawsuit against Defendant. (A true and correct copy of the December 5, 2023 right to sue letter is attached hereto as Exhibit A).

## FACTUAL ALLEGATIONS

11. On April 26, 2022, Plaintiff was hired by Defendant as a Bookseller. Plaintiff's job responsibilities included inventory, selling books and artwork, checking out customers, taking out the trash, and completely whatever tasks were necessary.

12. On information and belief, Plaintiff was the only disabled employee and the only employee over forty-years old.

13. In late 2020, Plaintiff was diagnosed with Lumbar Spondylosis with Left Radiculitis in her left leg. Plaintiff wears a knee brace which was obvious to everyone who worked with her, and on multiple occasions during her employment she discussed her nerve damage with Danielle Mullen-Moore ("Mullen"), the store owner. Plaintiff's disability did not have any impact on her job responsibilities.

14. Other store employees employed at the time included Nahin Cano ("Cano") (under the age of 40/non-disabled), General Manager, Clara Richardson ("Richardson") (under the age of 40/non-disabled), Bookseller, Hannah Madonia ("Madonia") (under the age of 40/non-disabled), Bookseller, Josh Manigault ("Manigault") (under the age of 40/non-disabled),

Bookseller and Julius Barajas ("Barajas") (under the age of 40/non-disabled) Assistant General Manager.

15. Plaintiff was forty-two (42) years old while employed by Defendant. At all relevant times Plaintiff was qualified for the position of Bookseller and she diligently performed her job in a manner that met Defendant's legitimate expectations.

16. Shortly after Plaintiff and Madonia were hired, a promotion became available. The promotion was duties included book ordering and social media marketing. On information and belief, Plaintiff and Madonia have similar skills in book ordering and social media marketing. Ultimately, the promotion was given to Madonia while Plaintiff was denied the same opportunities as Madonia. Thereafter, Mullen allowed Madonia to expand her job responsibilities, granting her increased opportunities for advancement and pay increases.

17. Defendant subjected Plaintiff to unequal terms and conditions of employment when it failed to provide Plaintiff with opportunities for advancement that it provided to non-disabled employees under the age of forty (40).

18. In late 2022, Mullen made several disparaging comments to Plaintiff regarding her age including, but not limited to, "is your old ass ok?" "I know you have to take your menopausal ass home to take a nap." "Let someone else do it, you know you're too old to be doing all that." "Ahha with your old ass" and "get your old ass over there and help people out" and made fun of Plaintiff on a regular basis.

19. During mid and late 2022, Mullen made several comments regarding the Defendant lacking a human resources department because "half the things that people said in the store would cause some type of discrimination issue."

20. In mid and late 2022, Plaintiff, on several occasions, told Mullen that she did not appreciate Mullen's comments and that they bothered her. In response, Mullen would just laugh and walk away from Plaintiff.

21. Following Plaintiff's conversations with Mullen, Mullen would routinely force Plaintiff to run personal errands for her. On information and belief, no other employees were required to complete Mullen's personal errands.

22. Within two to two-and-a-half months from when Plaintiff was hired, Cano began making disparaging comments regarding Plaintiff's age to store employees and customers. On numerous occasions Mullen and Cano would talk negatively in front of customers. These conversations negatively affected Plaintiff's ability to complete sales and conduct business.

23. In or about early May 2022, Plaintiff began to suffer from premenopausal symptoms and would periodically suffer from hot flashes. Thereafter, Plaintiff told Mullen about the premenopausal symptoms in a private conversation.

25. In or about the end of May 2022, during a store-wide staff meeting, Mullen, without Plaintiff's consent, told other employees that Plaintiff was premenopausal and was having hot flashes. Specifically, Mullen stated in front of everyone that, "Hey, I just want to let everyone know that Erykah's old ass is going through menopause." Mullen then told the employees that Plaintiff would be unstable due to her symptoms. Plaintiff was stunned by Mullen divulging her private health information and asked Mullen "Why would you say that? I wish you wouldn't have said that."

27. Following this incident, Mullen continued to make comments about Plaintiff's age and menopause such as, "Here her old ass go again sweating like a motherfucker", and "OH damn,

5

you're glistening, you're shining." Mullen would make these comments in front of customers and Plaintiff's coworkers.

28. In addition to comments about her age, Plaintiff was also subjected to disparaging comments about her knee brace and disability. For example, Mullen stated to Plaintiff that "I see you with your old ass and your knee brace, be careful that you don't fall", and "Keep walking around like that you're going to need a new knee brace."

29. On information and belief Defendant knew about Plaintiff's disability when it hired her.

30. Plaintiff requested a reasonable accommodation from Defendant to be able to sit down periodically but was instead chastised for sitting down while non-disabled employees were allowed to sit down on a regular basis without admonishment. Nevertheless, despite her disability, Plaintiff met the legitimate expectations of Defendant.

32. In or about December 23, 2022, Plaintiff privately told Mullen that she needed to have surgery in January of 2023 for uterine fibroids. Plaintiff told Mullen that her surgery was minor and that she would only need a week off work.

33. Mullen responded that Plaintiff would need much more time to recover, and that Plaintiff would be off work for at least two (2) or three (3) months. Mullen then proposed that since the store was going to be slow during early 2023, and because she was planning on remodeling the store, that she was going to layoff Plaintiff effective December 24, 2022.

34. On information and belief, Mullen lied to Plaintiff about remodeling the store because no remodeling occurred at the store and no other employees were laid off.

35. In December 2022, during a storewide meeting, Mullen announced that Defendant was going to lay off Plaintiff. Thereafter, Defendant discharged Plaintiff.

36. Following Plaintiff's discharge, Defendant failed and/or refused to rehire Plaintiff.

## COUNT I
### Age Discrimination (ADEA)

37. Plaintiff reinstates and incorporates the above paragraphs as if fully set forth herein.

38. That Plaintiff was over the age of forty (40) during the relevant time period and a member of a protected class under the ADEA.

39. That at the relevant time, Plaintiff was forty-two (42) years old and was the oldest employee working For Defendant.

40. That Mullen was thirty-five (35) and similarly situated employees to Plaintiff was under the age of forty (40).

40. That employees under the age of forty (40) were not discriminated against or terminated.

41. That during Plaintiff's employment with Defendant, she was qualified for the position that she held and she diligently performed her job in a manner that met Defendant's legitimate expectations.

42. That Defendant took an adverse action by terminating Plaintiff based on Plaintiff's age, forty-two (42) in violation of 29 U.S.C. § 623(a)(1) *et seq*.

43. That as a direct and proximate result of the civil rights violations committed against Plaintiff by Defendant, Plaintiff suffered embarrassment, humiliation, insult, emotional injury, pain and suffering, loss of employment, wages, future income, seniority, and other benefits of employment, and incurred attorney's fees and costs.

## COUNT II
## Age Discrimination (IHRA)

44. Plaintiff reinstates and incorporates the above paragraphs as if fully set forth herein.

45. That Plaintiff's age at the relevant time was forty-two (42) and therefore was a member of a protected class (persons over the age of forty (40) under the Illinois Human Rights Act.

46. That during Plaintiff's employment with Defendant, she was qualified for the position she held and diligently performed her job in a manner that met Defendant's legitimate expectations.

47. That Defendant's actions referenced in this Complaint constitute adverse employment actions and were taken against Plaintiff on the basis of her age.

48. That by the actions set out in this Complaint, Defendant subjected Plaintiff to harassment and unequal terms and conditions of employment because of her age.

49. That Defendant discharged Plaintiff because of her age in violation of 775 ILCS § 5/2-102(A) *et seq* of the Illinois Human Rights Act.

50. That similarly situated employees under the age of forty (40) were not discharged.

51. As a direct and proximate result of the civil rights violations committed against Plaintiff by Defendant, Plaintiff suffered embarrassment, humiliation, insult, emotional injury, pain and suffering, loss of employment, wages, future income, seniority, and other benefits of employment, and incurred attorney's fees and costs.

## COUNT III
### Disability Discrimination (ADA)

52. Plaintiff reinstates and incorporates the above paragraphs as if fully set forth herein.

53. That in addition to the age discrimination that Plaintiff endured, Plaintiff was also subjected to disability discrimination by Defendant.

54. That, in late 2020, Plaintiff was diagnosed with Lumbar Spondylosis with Left Radiculitis in her left leg which is not minor and is permanent. Therefore, Plaintiff is disabled under the meaning of 42 U.S.C. Title I § 12102(1)(A) of the Americans with Disabilities Act.

55. That Plaintiff was a qualified individual under the meaning of 42 U.S.C. Title I § 12111(8) of the ADA.

56. That Plaintiff is otherwise qualified to perform the essential functions of her job with or without reasonable accommodations.

56. That Defendant was aware of Plaintiff's disability.

57. That Mullen and Cano, would routinely make fun of Plaintiff and make disparaging comments for Plaintiff having a knee brace.

58. That Defendant discharged Plaintiff due to her disability in violation of 42 U.S.C. § 12112(a) *et seq* of the Americans with Disabilities Act.

59. That similarly situated non-disabled employees were treated more favorably under similar circumstances and were not terminated.

60. That Defendant's actions described herein constitute adverse employment actions and were taken against Plaintiff on the basis of her disability.

61. That as a direct and proximate result of the civil rights violations committed against Plaintiff by Defendant, Plaintiff suffered embarrassment, humiliation, insult, emotional injury,

pain and suffering, loss of employment wages, future income, seniority and other benefits of employment, and incurred attorney's fees and costs.

## COUNT IV
### Disability Discrimination (IHRA)

62. Plaintiff reinstates and incorporates the above paragraphs as if fully set forth herein.

63. That Plaintiff is disabled within the meaning of Section 1-103(I) of the Illinois Human Rights Act and a member of a protected class of individuals under the IHRA.

64. That Defendant was aware of Plaintiff's disability.

65. That notwithstanding Plaintiff's disability, Plaintiff was able to perform her job duties in such a way that met Defendant's legitimate expectations.

66. That Defendant's actions referenced in Count III of this Complaint constitute adverse employment actions and were taken against Plaintiff on the basis of her disability.

67. That by the actions set out in Count III of this Complaint, Defendant subjected Plaintiff to harassment and unequal terms and conditions of employment because of her disability, and discharged her in violation of 775 ILCS § 5/2-102(A) *et seq* of the Illinois Human Rights Act.

68. That similarly situated non-disabled employees were treated more favorably under similar circumstances and were not discharged.

69. That as a direct and proximate result of the civil rights violations committed against Plaintiff by Defendant, Plaintiff suffered embarrassment, humiliation, insult, emotional injury, pain and suffering, loss of employment wages, future income, seniority and other benefits of employment, and incurred attorney's fees and costs.

## COUNT V
### Hostile Work Environment (ADEA)

70. Plaintiff reinstates and incorporates the above paragraphs as if fully set forth herein.

71. That based upon the above actions taken by the Defendant, Plaintiff was subjected to a hostile work environment under the provisions of the ADEA.

72. That due to the constant harassment and torment she received from Defendant employees and supervisors, such as from Cano and Mullen, about her age, Plaintiff's workplace was both subjectively and objectively offensive.

73. That due to Cano's, Mullen's and other employees' constant pejorative and demeaning statements about her age, Defendant created a hostile work environment for Plaintiff. Defendant's harassment was not simply offensive, but was severe and pervasive.

74. That Defendant's harassment was due to one of Plaintiff's protected characteristic (age-over 40).

75. That Defendant's harassment was not only constant and on a weekly, sometimes daily basis, but it was also both subjectively and objectively so severe and pervasive as to alter the conditions of employment and create an abusive working environment.

76. That Defendant's behavior was pervasive, long-lasting, severe and widespread enough that a reasonable person would consider the environment intimidating, hostile, or abusive.

77. That by ridiculing Plaintiff with humiliating statements in front of customers and coworkers, Defendant unreasonably interfered with Plaintiff's work.

78. That there is a basis for Defendant's liability in this matter due to the fact that employees under the age of forty (40) were not subjected to the same hostile work environment as Plaintiff and the fact that an employer is subject to vicarious liability for an actionable hostile work environment created by a supervisor (in this case Cano and Mullen) with immediately or

11

successively higher authority over the employee. Furthermore, Defendant was clearly aware of the disparaging comments directed to Plaintiff and failed to make reasonable corrective measures.

79. That because of the forgoing, Defendant created a hostile work environment according to the ADEA Section 29 U.S.C. § 623(a)(1) *et seq*.

80. That as a direct and proximate result of the civil rights violations committed against Plaintiff by Defendant, Plaintiff suffered embarrassment, humiliation, insult, emotional injury, pain and suffering, loss of employment wages, future income, seniority and other benefits of employment, and incurred attorney's fees and costs.

## Count VI
### Hostile Work Environment (ADA)

81. Plaintiff reinstates and incorporates the above paragraphs as if fully set forth herein.

82. That based upon the above actions taken by the Defendant, Plaintiff was subjected to a hostile work environment under the provisions of the ADA.

83. That due to the constant harassment and torment she received from Defendant's employees and supervisors, (in this case Cano and Mullen) about her disability, Plaintiff's workplace was both subjectively and objectively offensive.

84. That due to Cano's, Mullen's and other employees' constant pejorative and demeaning statements about her disability detailed above, Defendant created a hellish work environment for Plaintiff. Defendant's harassment was not simply offensive, but was clearly severe and pervasive.

85. That Defendant's harassment was due to one of Plaintiff's protected characteristics (disability- knee).

86. That Defendant's harassment was not only constant and on a weekly, sometimes daily basis but it was also both subjectively and objectively so severe and pervasive as to alter the conditions of employment and create an abusive working environment.

87. That Defendant's behavior was pervasive, long-lasting, severe and widespread enough that a reasonable person would consider the work environment intimidating, hostile, or abusive.

88. That by ridiculing Plaintiff with humiliating statements in front of customers about her knee brace, Defendant unreasonably interfered with Plaintiff's work in conducting sales.

89. That there is a basis for Defendant's liability in this matter due to the fact that non-disabled employees were not subjected to the same hostile work environment as Plaintiff and the fact that an employer (Semicolon) is subject to vicarious liability for an actionable hostile work environment created by a supervisor (in this case Cano and Mullen) with immediately or successively higher authority over the employee. Furthermore, Defendant was clearly aware of the disparaging comments directed to Plaintiff and failed to make reasonable corrective measures.

90. That because of the forgoing, Defendant created a hostile work environment according to the ADA 42 U.S.C. § 12112(a) *et seq*.

91. That as a direct and proximate result of the civil rights violations committed against Plaintiff by Defendant, Plaintiff suffered embarrassment, humiliation, insult, emotional injury, pain and suffering, loss of employment wages, future income, seniority and other benefits of employment, and incurred attorney's fees and costs.

**COUNT VII**
**Hostile Work Environment: Age (IHRA)**

92. Plaintiff reinstates and incorporates the above paragraphs as if fully set forth herein.

93. That based upon the above actions taken by the Defendant, Plaintiff was subjected to a hostile work environment under the provisions of the IHRA.

94. That due to the constant harassment and torment she received from Defendant employees and supervisors, such as from Cano and Mullen, about her age, Plaintiff's workplace was both subjectively and objectively offensive.

95. That due to Cano's, Mullen's and other employees' constant pejorative and demeaning statements about her age, Defendant created a hostile work environment for Plaintiff. Defendant's harassment was not simply offensive, but was severe and pervasive.

96. That Defendant's harassment was due to one of Plaintiff's protected characteristic (age-over 40).

97. That Defendant's harassment was not only constant and on a weekly, sometimes daily basis but it was also both subjectively and objectively so severe and pervasive as to alter the conditions of employment and create an abusive working environment.

98. That Defendant's behavior was pervasive, long-lasting, severe and widespread enough that a reasonable person would consider the environment intimidating, hostile, or abusive.

99. That by ridiculing Plaintiff with humiliating statements in front of customers and coworkers, Defendant unreasonably interfered with Plaintiff's work.

100. That there is a basis for Defendant's liability in this matter due to the fact that employees under the age of forty (40) were not subjected to the same hostile work environment as Plaintiff and the fact that an employer is subject to vicarious liability for an actionable hostile work environment created by a supervisor (in this case Cano and Mullen) with immediately or

14

successively higher authority over the employee. Furthermore, Defendant was clearly aware of the disparaging comments directed to Plaintiff and failed to make reasonable corrective measures.

101. That because of the forgoing, Defendant created a hostile work environment according to 775 ILCS § 5/2-102(A) *et seq* of the IHRA.

102. That as a direct and proximate result of the civil rights violations committed against Plaintiff by Defendant, Plaintiff suffered embarrassment, humiliation, insult, emotional injury, pain and suffering, loss of employment wages, future income, seniority and other benefits of employment, and incurred attorney's fees and costs.

### Count VIII
### Hostile Work Environment: Disability (IHRA)

103. Plaintiff reinstates and incorporates the above paragraphs as if fully set forth herein.

104. That based upon the above actions taken by the Defendant, Plaintiff was subjected to a hostile work environment under the provisions of the IHRA.

105. That due to the constant harassment and torment she received from Defendant's employees and supervisors, (in this case Cano and Mullen) about her disability, Plaintiff's workplace was both subjectively and objectively offensive.

106. That due to Cano's, Mullen's and other employees' constant pejorative and demeaning statements about her disability detailed above, Defendant created a hellish work environment for Plaintiff. Defendant's harassment was not simply offensive, but was clearly severe and pervasive.

107. That Defendant's harassment was due to one of Plaintiff's protected characteristics (disability- knee).

108. That Defendant's harassment was not only constant and on a weekly, sometimes daily basis but it was also both subjectively and objectively so severe and pervasive as to alter the conditions of employment and create an abusive working environment.

109. That Defendant's behavior was pervasive, long-lasting, severe and widespread enough that a reasonable person would consider the work environment intimidating, hostile, or abusive.

110. That by ridiculing Plaintiff with humiliating statements in front of customers about her knee brace, Defendant unreasonably interfered with Plaintiff's work in conducting sales.

111. That there is a basis for Defendant's liability in this matter due to the fact that non-disabled employees were not subjected to the same hostile work environment as Plaintiff and the fact that an employer (Semicolon) is subject to vicarious liability for an actionable hostile work environment created by a supervisor (in this case Cano and Mullen) with immediately or successively higher authority over the employee. Furthermore, Defendant was clearly aware of the disparaging comments directed to Plaintiff and failed to make reasonable corrective measures.

112. That because of the forgoing, Defendant created a hostile work environment according to Section 775 ILCS § 5/2-102(A) *et seq* of the IHRA.

113. That as a direct and proximate result of the civil rights violations committed against Plaintiff by Defendant, Plaintiff suffered embarrassment, humiliation, insult, emotional injury, pain and suffering, loss of employment wages, future income, seniority and other benefits of employment, and incurred attorney's fees and costs.

## JURY DEMAND

114. Plaintiff demands a jury on all triable issues.

## REQUEST FOR RELIEF

WHEREFORE, an ORDER is requested providing the following relief;

(a) That Defendant pay to Plaintiff a sum equal to the damages she has suffered because of embarrassment, humiliation, insult, and emotional suffering because of the civil rights violation committed against her by Defendant;

(b) That Defendant pay to Plaintiff a sum equal to any loss of wages she has suffered because of the discriminatory actions committed against her by Defendant;

(c) That Plaintiff be made whole as to all benefits and seniority status that would have accrued to her but for the civil rights violation committed against her by Defendant;

(d) That Defendant pay all fair and equitable compensatory and punitive damages.

(e) That Defendant clear from Plaintiff's personnel records all reference to the filing of this Complaint and the subsequent disposition thereof;

(f) That Defendant cease and desist from discriminating on the basis of age and disability;

(g) That Defendant pay to Plaintiff reasonable attorney's fees and costs incurred as a result of the civil rights violations alleged herein;

(h) That such further relief be granted as may be necessary to make Plaintiff whole.

Respectfully submitted,

ERYKAH ARDIS

By: /s/ Joseph C. Torres  
One of Plaintiff's Attorneys

Dated: 3/3/2024.

Joseph C. Torres
Karmel & Torres Law Firm
221 N. LaSalle Street, Suite 1550
Chicago, IL 60601
T: (312) 641-2910
D: (312) 702-2718
joe@karmellawfirm.com